Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, ALLIANCE FOR THE WILD ROCKIES,<br><br>Plaintiffs,<br><br>vs.<br><br>EMILY PLATT, National Forest Supervisor; KEITH LANNOM, U.S. Forest Service Deputy Regional Forester; U.S. FOREST SERVICE; U.S. FISH & WILDLIFE SERVICE<br><br>Defendants. | CV-23-112-DLC<br><br>RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS |

I. INTRODUCTION

In lieu of filing an Answer to Plaintiffs' Complaint in this case, Defendants filed a Motion for Partial Dismissal. Doc. 8. Defendants argue that Plaintiffs either waived or failed to exhaust administrative remedies for a portion of Claim One, and all of Claim Four, and that therefore this Court should dismiss those portions of Plaintiffs' Complaint. Doc. 8 at 2. This motion should be denied.

First, Defendants' motion should be denied because they ask the Court to review select documents outside the Complaint, including documents that are not referenced in the Complaint, while at the same time failing to provide the Court with the complete administrative record. It is well-established, binding law that "[i]f matters outside the pleadings are considered, the motion to dismiss is to be treated as one for summary judgment." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998). Thus, Defendants must either re-file this motion as a motion for partial summary judgment in compliance with Local Rule 56.1(a), with a Statement of Undisputed Facts and a complete administrative record, or they must follow the agreed-upon case management plan in this case, which states that Defendants' motion for summary judgment will be filed on May 13, 2024. Doc. 9 at 5.

Second, even if the Court were to consider documents outside the pleadings in this motion to dismiss, Defendants' motion must fail. The Ninth Circuit has

1

long held that members of the public do not need to cite specific regulations or incant specific regulatory language in the public comment processes in order to preserve a claim for litigation; instead, only the general issue needs to be raised. *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 966 (9th Cir. 2002). To hold otherwise would require members of the public to hire lawyers in order to meaningfully participate in the public process, in effect creating a pay-to-play system.

Regarding Claim One, Plaintiffs repeatedly voiced concerns over how the Forest Plan amendment in this case will degrade important elk habitat. Defendants' argument is that Plaintiffs' concerns should be ignored simply because they did not cite to the specific law – the "2012 Planning Rule" found at 36 C.F.R. §§ 219.8, 219.9. Under *Rittenhouse*, this specificity may be required of a lawyer in a legal brief, but not of a member of the public in a public comment process.

Regarding Claim Two, Defendants argue that Plaintiffs never raised the issue of lynx habitat remapping. However, during the NEPA process for the Project, Defendants never disclosed to the public the fact that they had remapped lynx habitat, in effect eliminating lynx habitat protections from 122,812 acres. The Ninth Circuit holds that where the Forest Service hides the relevant information from the public, the public cannot then be faulted for not raising the issue. *All. for*

*the Wild Rockies v. Savage*, 897 F.3d 1025, 1034 (9th Cir. 2018). Throughout the record, Plaintiffs have repeatedly expressed concerns with lynx conservation and protection of lynx habitat; thus, the concern is sufficiently raised.

Finally, in the alternative, Plaintiffs respectfully request that this Court defer ruling on this motion to partially dismiss until the issues have been fully briefed in summary judgment with the benefit of a full administrative record. In the meantime, the Court may order Defendants to file an Answer to the unaffected claims in Plaintiffs' Complaint.

## II.  RESPONSE

**A.  The motion must be dismissed because it relies on matters outside the pleadings.**

First, Defendants' motion should be denied because they ask the Court to review select documents outside the Complaint, including documents that are not referenced in the Complaint, while at the same time failing to provide the Court with the complete administrative record, or even a table of contents for the administrative record. It is well-established, binding law that "[i]f matters outside the pleadings are considered, the motion to dismiss is to be treated as one for summary judgment." *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998).

Defendants wholly ignore this legal precedent. Instead of explaining why their motion should not be construed as a summary judgment motion, they assert

3

that "[a]ll documents cited in this brief are either referenced in the Complaint or subject to judicial notice as government documents," but they provide no evidence to support this blanket statement.  Doc. 8 at 3. It is Defendants' burden to establish that each individual document upon which they rely is properly before the Court at this stage; in other words, they must explain why each individual document should be construed as either referenced in the Complaint or subject to judicial notice. Defendants have failed to meet this burden.

Thus, Defendants must either re-file this motion as a motion for partial summary judgment in compliance with Local Rule 56.1(a), with a Statement of Undisputed Facts and a complete administrative record, or they must follow the agreed-upon case management plan in this case, which states that Defendants' motion for summary judgment will be filed on May 13, 2024.  Doc. 9 at 5.

**B.     Alternatively, the motion must be dismissed because Plaintiffs adequately raised concerns regarding protection of elk and lynx habitat.**

In the alternative, even if the Court were to consider documents outside the pleadings in this motion to dismiss, Defendants' motion must fail.  The Ninth Circuit sets a low bar for administrative exhaustion:  "alerting the decision maker to the problem in general terms, rather than using precise legal formulations." *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002).  Thus, members of the public do not need to cite specific regulations or

4

incant specific regulatory language in the public comment processes in order to preserve a claim for litigation; instead, only the general issue needs to be raised. *Id* at 966. To hold otherwise would require members of the public to hire lawyers in order to meaningfully participate in the public process, in effect creating a pay-to-play system.

In *Rittenhouse*, the Ninth Circuit held that there is no requirement for laypeople to "incant [] magic words" in order to leave the courtroom door open. 305 F.3d at 966. The court rejected the Forest Service's similar exhaustion argument and found that the conservationist plaintiffs were permitted to raise a claim that the Forest Service had failed to monitor the population trends of management indicator species, as required by the 1982 Planning Rule under 36 C.F.R. §219.19, because the plaintiffs had expressed a general concern about the health of those wildlife species. *Id*. The Ninth Circuit rejected the Forest Service's argument that the plaintiffs should have cited the precise regulation or used the precise language of the regulation, such as "monitor" or "population trend," in order to leave the courtroom door open. *Id.*

The same reasoning applies here. Regarding Claim One, the law simply does not require that Plaintiffs specifically cite to the the "2012 Planning Rule" or 36 C.F.R. §§ 219.8 or 219.9. *Rittenhouse*, 305 F.3d at 966; *see* Defendants' Brief at 11 (making this argument). Instead, the relevant inquiry is whether Plaintiffs

5

put Defendants on notice of their concerns with the adequacy of elk habitat on the Forest – they did, and they did so repeatedly.

The substance of the primary 2012 Planning Rule claim raised in Plaintiffs' Complaint is that Defendants failed "to include standards or guidelines that maintain or restore elk habitat." Doc. 1 ¶ 138. Plaintiffs' public comments raised this substantive issue:

> There is no evidence that the massive and long term disturbances planned for this 210 square-mile area will maintain a diversity of wildlife *without a single management standard for the MIS elk. Without any wildlife standards, there is no basis for the agency to claim that a diversity of wildlife will be maintained in this analysis area. The agency needs, as is required by the NFMA and NEPA, to identify the criteria that will be measured* as for maintaining a diversity of wildlife. If there are no criteria, then the agency cannot demonstrate that a diversity of wildlife is being maintained.

Doc 8-2 at 3; *see also* Doc. 8-6 at 27 ("The agency failed to define *why Forest Plan direction for wildlife is not incorporated* as an important function of ecosystems, including elk hiding cover, mule deer hiding cover, elk calving habitat, mule deer calving habitat, elk thermal cover, and mule deer thermal cover."). Similarly, Plaintiffs raised concerns about how the Project will impact threatened species, Doc. 8-2 at 7, and species of concern, Doc. 8-2 at 5.

Thus, while Plaintiffs did not incant the magic words "2012 Planning Rule," they did raise their concerns in a meaningful, substantive manner.

Regarding Claim Two, Defendants argue that Plaintiffs never raised the

issue of lynx habitat remapping.  However, it is undisputed that during the NEPA process for the Middleman Project, Defendants never disclosed to the public the fact that they had remapped lynx habitat, in effect eliminating lynx habitat protections from approximately 125,000 acres.  *See* Doc. 1 ¶168.

The purpose of exhaustion/waiver requirements is to ensure that agencies are aware of issues – certainly the Forest Service was aware that it remapped and eliminated thousands of acres of lynx habitat with no public process.  Certainly, the Forest Service was also aware that this course of conduct is unlawful, because the District of Idaho reached such a holding over a decade ago for lynx habitat remapping on the Caribou-Targhee National Forest in Idaho.  *Native Ecosystems Council v. U.S. Forest Serv*, 866 F. Supp. 2d 1209, 1234 (D. Id. 2012).  This Court recently reaffirmed the illegality of this practice in the context of lynx habitat remapping on the Custer-Gallatin National Forest in Montana.  *All. for the Wild Rockies v. United States Forest Serv*., No. CV 21-84-M-DLC, 2023 WL 5427921, at *7 (D. Mont. Aug. 23, 2023).

Accordingly, it was likely strategic that the agency refused to disclose this information regarding lynx habitat remapping on the Helena-Lewis and Clark National Forest to the public in the public process for the Middleman Project.  The agency should not now profit from its improper withholding of this information.

As this Court has previously addressed under similar circumstances:

> Given the lack of transparency surrounding the method of calculation provided in the EA, [FN8] Federal Defendants cannot now claim that Plaintiffs failed to raise their concerns with sufficient clarity to allow the Forest Service to address those concerns during the administrative process. Plaintiffs' claim is administratively exhausted.
>
> [FN 8]
>
> For example, the EA itself must be read in conjunction with the Wildlife Report in order to establish that elk hiding cover was calculated based on modeled data and that this data was incomplete. []. The EA does not include the map indicating which portions of each elk analysis unit were considered in the hiding cover calculations. []. Nor does the EA disclose that the Forest Service calculates hiding cover using the method prescribed in the "Gallatin Forest Plan Hiding Cover Standard Assessment." []. This was disclosed in the Scarlett Declaration which was submitted with Federal Defendants' cross motion for summary judgment only after the Forest Service realized there was a mistake in the Project's calculation of elk hiding cover in the first place [].

*Native Ecosystems Council v. Marten*, 612 F. Supp. 3d 1146, 1163 (D. Mont. 2020) (internal citations omitted). Similarly here, the Project EA never disclosed the relevant and necessary information to the public.

Likewise, in *Savage*, the Ninth Circuit rejected a Forest Service exhaustion argument because "Alliance's failure to object at an earlier time resulted from the Forest Service's failure to disclose this aspect of the Project in the Draft Environmental Impact Statement." 897 F.3d at 1034. As the Ninth Circuit further explained:

> Although there was a map containing the relevant information in the agency record (made available to the public at the Libby, Montana ranger station at the time of publishing the Draft Environmental

8

> Impact Statement), there was nothing in the Draft Environmental Impact Statement that would have alerted a reader to the existence of the map. Furthermore, it would have been erroneous to incorporate that map by reference; at a minimum, the map should have been included in the Draft Environmental Impact Statement appendix. []
> To the extent Defendants argue that some obscure combination of maps and tables in the Draft Environmental Impact Statement and its appendix would have put Alliance on notice, we have reviewed those materials, find them lacking, and reject the argument. In short, it is a futile task to attempt to divine, from those documents, the aspect of the Project to which Alliance objects.

*Id* at n.13. Similarly here, the Project EA failed to provide the relevant information from which a member of the public could attempt to divine the information that the Forest Service was refusing to disclose.

For all of these reasons, the Forest Service's waiver/exhaustion arguments are not well-taken, and it's motion for partial dismissal must be denied.

**C.   Alternatively, the Court should defer ruling on this motion until the matter can be fully briefed in the Parties' cross-motions for summary judgment.**

Finally, in the alternative, Plaintiffs respectfully request that this Court defer ruling on this motion to dismiss until the issues have been fully briefed in summary judgment with the benefit of a full administrative record. In the meantime, the Court may order Defendants to file an Answer to the remaining, unaffected claims in Plaintiffs' Complaint.

## III.  CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court either

deny Defendants' motion outright, or, in the alternative, defer ruling on this motion until the issues are fully briefed in summary judgment briefing, and in the meantime order Defendants to file an Answer to the remaining claims in Plaintiffs' Complaint.

Respectfully submitted this 8th Day of January, 2024

>*/s/ Rebecca K. Smith*
>Rebecca K. Smith
>PUBLIC INTEREST DEFENSE CENTER, PC
>
>Timothy M. Bechtold
>BECHTOLD LAW FIRM, PLLC
>
>Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is 2,285 words, excluding the caption, signature blocks, and certificate of compliance.

>*/s/ Rebecca K. Smith*
>Rebecca K. Smith
>PUBLIC INTEREST DEFENSE CENTER, PC
>
>Timothy M. Bechtold
>BECHTOLD LAW FIRM, PLLC
>
>Attorneys for Plaintiffs